UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

John William Parker,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Sid Canham, individually and as an employee of Mahnomen County; Richard Rooney, individually and as Sheriff of the County of Mahnomen; County of Mahnomen,

Defendants. Civ. No. 01-1918(RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 28th day of January, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment. The Plaintiff has appeared pro se, and in forma pauperis, and the Defendants have appeared by Michelle M. Soldo, Esq.

For reasons which follow, we recommend that the Defendant's Motion for Summary Judgment be granted.

(35)

JAN 28 2003

## II. Factual and Procedural Background

This action arises from a traffic stop of the Plaintiff's vehicle on Highway 59, in the County of Mahnomen, which is also within the exterior boundaries of the White Earth Indian Reservation. On January 1, 2000, at approximately 10:39 o'clock p.m., the Plaintiff's vehicle was stopped, for speeding, by the Defendant Sid Canham ("Canham"), who was acting in his official capacity as a Deputy Sheriff in the Mahnomen County Sheriff's Department, and was driving a marked Sheriff's Department squad car. Canham, using his squad car's radar unit, clocked the Plaintiff's vehicle traveling thirteen miles per hour over the posted speed limit of fifty-five miles per hour. As noted, the Plaintiff's vehicle was stopped on Highway 59, which runs north and south, transecting Mahnomen County.

Upon stopping the Plaintiff, Canham approached the vehicle on the driver's side, holding a flashlight near his shoulder, in order that he could illuminate the interior of the Plaintiff's vehicle. Canham saw that the Plaintiff was not wearing his seatbelt, and he also observed a female passenger, who the Plaintiff subsequently identified as Candice Thompson. Canham asked the Plaintiff for identification, and the Plaintiff provided Canham with both his Minnesota driver's license, and his tribal identification card, as

the Plaintiff is a member of the White Earth Band of Chippewa Indians ("the White Earth Band").

The Plaintiff then questioned the authority of Canham, as a Mahnomen County Deputy Sheriff, to stop the Plaintiff, as a member of the White Earth Band within the exterior boundaries of the White Earth Indian Reservation. Apparently without heeding the Plaintiff's concerns, Canham instructed the Plaintiff to wait in his vehicle while Canham returned to his squad car to run a check on the Plaintiff's driver's license. Canham reported that, while he was in his squad car, the Plaintiff exited his vehicle, and walked quickly toward Canham's car. Canham instructed the Plaintiff several times, using his squad car's public address system, to return to his vehicle. Given the Plaintiff's conduct, Canham requested his dispatcher to provide him with back-up in case the Plaintiff continued to be aggressive. Canham's request for back-up was made at approximately 10:41 o'clock p.m. After completing the check of the driver's license check, Canham returned to the Plaintiff's vehicle, at which time, the Plaintiff continued to assert that Canham lacked authority to stop him.

By way of additional background, all of Mahnomen County is located on land that is part of the White Earth Indian Reservation. Highways, and roadways, in Mahnomen County are open to the public, maintained by the County, and patrolled by County law enforcement

personnel. In March of 1999, Mahnomen County, along with Becker and Clearwater Counties, which also extend into the White Earth Indian Reservation, entered into separate, but similar, Cooperative Law Enforcement Agreements ("Cooperative Agreements"), with the White Earth Band, in order to coordinate law enforcement efforts within the Reservation. The Cooperative Agreement, which was entered by Mahnomen County and the White Earth Band, authorized County deputies, and Tribal police officers, to assist each other in the enforcement of State laws, including authorizing County deputies to assist the Tribal police in the enforcement of traffic laws, against White Earth Band members who commit offenses within the Reservation. The Cooperative Agreement expressly authorized County deputies to take appropriate action, in response to violations by White Earth Band members, including issuing warnings, and submitting incident reports to the Tribal police. Tribal Courts, however, retained the sole authority, and discretion, to charge and prosecute White Earth Band members for offenses committed within the Reservation.

On January 1, 2000, the date on which Canham stopped the Plaintiff's vehicle, the Cooperative Agreement between Mahnomen County, and the White Earth Band, was in effect. In November of 2001, however, Mahnomen County withdrew from that Agreement, and the Agreement is no longer in effect. Consistent with the provi-

sions of the Cooperative Agreement, which was then in effect, Canham explained to the Plaintiff that, while he had no authority to issue the Plaintiff a citation, he would submit an incident report to the Tribal police for their review. Canham further explained that the Tribal police would likely issue the Plaintiff a citation for speeding, and driving without a seatbelt. Canham then told the Plaintiff that the Plaintiff was free to leave and, at approximately 10:48 o'clock p.m., Canham radioed the County dispatcher in order to cancel his request for back-up.

The Plaintiff filed this action, which alleges that Canham's stop of his vehicle, as well as his subsequent actions, were racially motivated, in violation of Title 42 U.S.C. §1983, and the Minnesota Human Rights Act ("MHRA"), Minnesota Statutes Section 363.06. The Plaintiff also asserts State common law claims for false imprisonment, abuse of process, and assault, and he challenged the legality of the Cooperative Agreement. In response, the Defendants have filed their Motion for Summary Judgment.

III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477

U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). In this process, the Court must liberally construe a pro se Complaint. See Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). However, while we construe the pro se plaintiff's pleading charitably, the plaintiff's status does not alter either the substantive or procedural burdens he must carry to survive Summary Judgment. See Noland v. Commerce Mortg. Corp., 122 F.3d 551, 553 n. 3 (8th Cir. 1997).

For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026, 1028 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d

992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole

Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. Since they involve different considerations, we first address the Plaintiff's constitutional claims, and then the Plaintiff's State law claims.

1. The Constitutional Claims. The Plaintiff alleges a violation of Section 1983, but the precise nature of the claimed constitutional violation is not clear. See Complaint; Parker Deposition, at 22-23. Upon an indulgent construction, we read the Complaint to assert violations of the Plaintiff's rights to equal protection under the Fourteenth Amendment and a violation of his Fourth Amendment rights.

To establish Section 1983 liability, a plaintiff must demonstrate that an act, which was performed under color of State law, resulted in a deprivation of rights that are secured by the United States Constitution, or by Federal law or Treaty. Lindstedt v. Missouri Libertarian Party, 160 F.3d 1197, 1198 (8th Cir. 1998); Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998), citing Haberthur v. City of Raymore, 119 F.3d 720, 723 (8th Cir. 1997). The Plaintiff named Canham both in his individual capacity, and as an employee of Mahnomen County; Sheriff Rooney, in his individual, and as a Sheriff; and the County of

Mahnomen, as Defendants. As a result, we must analyze each of the Defendants' roles in this case.

a. Sheriff Rooney. The Plaintiff has not alleged any specific conduct, which was perpetrated by the Sheriff, which violated any of the Plaintiff's constitutional rights. Moreover, there is no indication that Rooney had any contact with the Plaintiff, either directly, or indirectly. As a consequence, we must grant the Sheriff's Motion for Summary Judgment, as to the claims asserted against him, in his individual capacity. See, Rizzo v. Goode, 423 U.S. 362, 375-76 (1976); Ripson v. Alles, 21 F.3d 805, 808-09 (8th Cir. 1994)(where individual was arrested by a police officer without probable cause, the police chief was entitled to summary judgment dismissing the arrestee's Section 1983 claims against him, because his only connection to the unlawful conduct was that he was the supervisor of the arresting officer).

To the extent that the Plaintiff alleges that the Sheriff violated his rights in his capacity as the Mahnomen County Sheriff, and as Canham's supervisor, that allegation must be treated as having been asserted against the County. See, Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998)(suit against Sheriff in his official capacity must be treated as suit against County). Therefore, Summary Judgment is also appropriate on the Plaintiff's constitutional claims against the Sheriff, in his capacity as Sheriff. As

the law makes plain, if the Plaintiff has a claim against the Sheriff, it must be alleged against the County in which the Sheriff is employed.

b. Mahnomen County. It is well settled that, under Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978), a municipality "cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." [Emphasis in original]. See Armstrong v. Mille Lacs County Sheriff's Dep't, 228 F. Supp.2d 972, 983 (D. Minn. 2002). Of course, the County may be held liable, under Section 1983, if the execution of its policy, or custom, resulted in a deprivation of a constitutional right. Id., citing Monell v. Department of Social Servs., at 694; see also, McMillian v. Monroe County, 520 U.S. 781, 783 (1997)(determining that a County is liable, under Section 1983, for the actions of its Sheriff, which constitute County policy); Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000)("[A] municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality"); McGautha v. Jackson County, 36 F.3d 53, 56 (8th Cir. 1994)("Respondeat superior does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible.").

Here, however, the Plaintiffs' Complaint is devoid of any allegation that a policy or custom, of Mahnomen County, caused the Plaintiff's alleged injuries, nor have the Plaintiffs proffered any evidence of such a policy or custom.[1] Thus, the Plaintiff's claims against the County, as they have been pled, cannot stand, and we

---

[1]In his Complaint, the Plaintiff challenges the authority of the County of Mahnomen to enter into the Cooperative Agreement, pursuant to which Canham submitted an incident report, which detailed the Plaintiff's alleged violations of State law, to the Tribal police. However, we do not read the Complaint to suggest that the Cooperative Agreement, as a policy, violated his constitutional rights. Moreover, even assuming that the Plaintiff did advance such a theory, we find no nexus between the infringement of any Federal rights, and the Cooperative Agreement, as the Cooperative Agreement does not authorize, suggest, or condone, any unconstitutional act.

As the Plaintiff notes, under Public Law 280, Title 18 U.S.C. §1162, and Title 28 U.S.C. §1360, the White Earth Band has the exclusive authority to prosecute its members for traffic violations, but there is nothing illegal, let alone unconstitutional, in the White Earth Band accepting the assistance of Mahnomen County deputies in policing those laws, including State laws, that the tribal authorities choose to enforce. See, State v. Stone, 572 N.W.2d 725 (Minn. 1997). While, by superficial appearance, Canham wore the indicia of a Mahnomen Sheriff's deputy, when he stopped the Plaintiff's motor vehicle, he was authorized to do so by the White Earth Band, which plainly had jurisdiction to make the traffic stop. We understand the Plaintiff to baldly contest the validity of the Cooperative Law Enforcement Agreement, between the White Earth Band, and the County of Mahnomen, but he offers no showing, however slight, that the Agreement is unlawful, let alone ineffective in vesting Canham with the authority necessary to stop a vehicle being driven by a White Earth Band member, such as the Plaintiff's vehicle. Such agreements have the imprimatur of State law, see Minnesota Statutes Sections 626.93, Subdivision 4, and 471.59, and, in this Record, there is unrebutted evidence that the Agreement was effectively negotiated, and entered, by Mahnomen County, and the White Earth Band.

recommend that the County's Motion for Summary Judgment, on the Section 1983 claims asserted against the County, and the Sheriff, as Sheriff, be granted.

c. Canham. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights, of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001); Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 984. In order "[t]o withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, Young v. Harrison, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the

action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, supra at 614. The contours of the constitutional rights at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987). As a result, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

Here, the "clearly established constitutional right," upon which the Plaintiff relies, is not clearly articulated in the Complaint. See Parker Deposition, at 22-23. Regardless of whether the claimed rights were clearly established, if Canham had probable cause to stop the Plaintiff's vehicle, then there is no basis for the Plaintiffs' constitutional claims. See, Saucier v. Katz, 533 U.S. 194, 201 (2001)("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitu-

tional right? This must be the initial inquiry."); see also, Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)("[I]f the police officers had probable cause to believe that Habiger was violating the TRO by yelling or screaming so as to substantially interfere with the provision of medical services * * *, his arrest was valid and would not violate either the Fourth or the First Amendment."); Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 985.

The uncontroverted evidence before us establishes that Canham stopped the Plaintiff's vehicle for speeding, after clocking that vehicle traveling well in excess of the posted speed limit. Plainly, Canham had probable cause to stop the Plaintiff's vehicle.[2] See United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000) (Trooper's observation of driver speeding provided probable cause to stop the automobile); United States v. Beck, 140 F.3d 1129, 1133-34 (8th Cir. 1998)("We have previously observed, '"[i]t is well established that a traffic violation -- however minor -- creates

---

[2]For purposes of qualified immunity, however, "'[t]he issue * * * is not probable cause in fact but arguable probable cause[.]'" Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996), quoting Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir. 1987); see also, Kuehl v. Burtis, 173 F. 3d 646, 649 (8th Cir. 1999)("[L]aw enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so -- provided that the mistake is objectively reasonable.").

probable cause to stop the driver of a vehicle.'"); United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996), cert. denied, 519 U.S. 1140 (1997); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999), cert. denied, 528 U.S. 981 (1999)(stating that "any traffic violation, even a minor one, gives an officer probable cause to stop the violator"), quoting United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996). Since Canham had probable cause to stop the Plaintiff's vehicle, we find that Canham is entitled to qualified immunity as to that aspect of the Plaintiff's claims against him.

We recognize, however, that the Plaintiff regards the traffic stop as violating his constitutional rights, not only by its very occurrence, but also because it was, in his view, unlawfully extended. According to the Plaintiff, Canham detained him for a period of one-half hour, or so. Thus, we must now examine whether Canham detained the Plaintiff for a constitutionally unreasonable length of time. "[H]aving made a valid traffic stop, [a] police officer may detain [an] offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." U.S. v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999), citing United States v. Carrazco, 91 F.3d 65, 66 (8th Cir. 1996).

"A traffic stop is not investigative; it is a form of arrest, based upon probable cause that a penal law has been violated." Id.; see also U.S. v. Jack-son, 1999 WL 228411 at **2 (10th Cir., April 20, 1999)(stating that "[a] traffic stop is analogous to an investigative detention, and we analyze its reasonableness under the standards set forth in Terry v. Ohio, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3 (1968)"). However, "a routine traffic stop is not the equivalent of a full custodial arrest for constitutional purposes." Id. at 648, citing Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998).

The length of time of a traffic stop is not of the utmost judicial concern, as our Court of Appeals, in U.S. v. $404,905.00 in U.S. Currency, supra at 648, explained:

> We believe the Supreme Court would not closely examine the time it takes a traffic officer to complete the traffic stop itself, consistent with the discretion given arresting officers in other contexts. But once the officer decides to let a routine traffic offender depart with a ticket, a warning or an all clear -- a point in time determined, like other Fourth Amendment inquiries, by objective indicia of the officer's intent -- then the Fourth Amendment applies to limit any subsequent detention or search. That is the line we have drawn in prior cases. While the Supreme Court generally eschews line-drawing in Fourth Amendment cases, some such distinction must be made.

As a consequence, we must first determine when the traffic stop was completed. In U.S. v. $404,905.00 in U.S. Currency, our Court of

Appeals noted that, "[n]ormally, a traffic stop cannot end until the police officer has returned the offending driver's license and vehicle registration," "but here it is more realistic to conclude the traffic stop was complete when [the] Officer told [the plaintiff] his documents would be returned after the canine sniff." Id. at 649. There, as a part of the routine traffic stop, the police officer used a canine to search the outside of the plaintiff's vehicle for the presence of drugs. The Court held as follows:

> [T]he canine sniff was thirty seconds or two minutes over our line, and it was done without reasonable suspicion to believe there were drugs in this particular vehicle. Does this mean [the plaintiff] was unconstitutionally detained? We think not."

Id.

Here, after completing a check of the Plaintiff's driver's license, Canham returned to the Plaintiff's vehicle, agreed with the Plaintiff that he did not have the authority to issue a citation, informed the Plaintiff that he did, however, have the authority to submit an incident report to the Tribal police, and then told the Plaintiff that he was free to leave. Therefore, following the reasoning, which is set forth in U.S. v. $404,905.00 in U.S. Currency, the traffic stop ended when Canham returned to the Plaintiff's vehicle, and returned the Plaintiff's Tribal identification card, driver's license, and vehicle registration. Under the Fourth

Amendment, therefore, the Plaintiff was not unlawfully detained for any length of time.

Moreover, the duration of Canham's stop of the Plaintiff was not unreasonable. In his Complaint, the Plaintiff alleges that the stop lasted somewhere between twenty and thirty minutes. County radio logs reflect, however, that the stop lasted closer to nine minutes, or so. Nonetheless, taking the Plaintiff's allegations as true, a twenty to thirty minutes traffic stop is not unreasonable. U.S. v. Purcell, 236 F.3d 1274, 1279 (11th Cir. 2001) (holding that "[f]ourteen minutes is not an unreasonable amount of time for a traffic stop," as "[w]e have approved traffic stops of much longer duration"), citing U.S. v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988)(approving a traffic stop of fifty minutes duration); United States v. Shareef, 100 F.3d 1491, 1502 (10th Cir. 1996) (finding a 30 minute wait for computer check during a traffic stop to be reasonable). Further, in this instance, the Plaintiff admits to participating in some degree of confrontation with Canham, which undoubtedly prolonged the duration of the stop. Accordingly, we find that Canham is entitled to qualified immunity and, therefore, we grant the Defendants' Motion for Summary Judgment on the Plaintiff's constitutional claims.

d. Failure to Join an Indispensable Party. The Defendants argue that they should be awarded Summary Judgment on

the Plaintiff's Federal claims, and assert that, as a party to the Cooperative Agreement, under the authority of which Canham submitted the incident report to the Tribal police, the White Earth Band would be prejudiced by a disposition of the legality of the Cooperative Agreement in the Band's absence. Having granted the Defendants' Summary Judgment on all of the Plaintiff's Federal claims, however, we find it unnecessary to reach this argument. Further, as we have already observed, while the Plaintiff challenges the legality of the Cooperative Agreement, he does not assert that any provision of the Cooperative Agreement mandated, condoned, or caused, in any way, a violation of his constitutional rights. Therefore we turn to the Plaintiff's State law claims.

2. The State Law Claims. Upon a liberal construction of the Plaintiff's pro se Complaint, it appears that the Plaintiff asserts several State law claims, including an MHRA claim, together with causes of action for false imprisonment, assault, and abuse of process. While, given our recommended disposition of the Plaintiff's Federal claims, we could further recommend a dismissal of the State claims on supplemental jurisdiction grounds, in view of the progress of this action, which has once been set for Trial, we find the retention of jurisdiction over the State law claims to be a better use of discretion. See, Title 28 U.S.C. §1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction

over a claim under subsection (a) if -- (3) the district court has dismissed all claims over which it has original jurisdiction * * *."); see also, Lindsey v. Dillard's Inc., 306 F.3d 596, 599 (8th Cir. 2002)("Under §§1367(c) and 1441(c), a court is not required to remand state law claims when the only federal claim has been dismissed," for "[i]nstead, the district court maintains discretion to either remand the state claims or keep them in federal court."), citing Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 357 (1988).

"Federal courts considering non-federal questions (in diversity actions, or, as here, when a state claim is heard under [supplemental] jurisdiction) apply federal rules of procedure, and follow state law to resolve issues of substance." Sayre v. Musicland Group, Inc., a Subsidiary of American Can Co., 850 F.2d 350, 352 (8th Cir. 1988), citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Bank of St. Louis v. Morrissey, 597 F.2d 1131, 1134-35 (8th Cir. 1979); 1A Moore's Federal Practice ¶0.305[3], at 3050-51 (1987); see also Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000); Callas Enterprises, Inc. v. Travelers Indem. Co. of America, 193 F.3d 952, 955 (8th Cir. 1999); Woods v. Tyler Mountain Co., Inc., 1996 WL 7045 at *1 (8th Cir., January 10, 1996)(stating that, "[b]ecause we are considering a state law claim under our pendent jurisdiction, we 'apply federal rules of procedure, and follow

state law to resolve issues of substance,'"), citing Sayre v. Musicland Group, Inc., a Subsidiary of American Can Co., supra at 352.

The Defendants first contend that the Plaintiff's State law claims are time-barred. They also suggest that his State law claims are barred by immunity. Finally, the Defendants argue that the Plaintiff's false imprisonment, abuse of Process, and assault claims, are not supported by the evidence in the Record. We take each of the Defendants' challenges in turn, starting with the Defendants' statute of limitations defense.

a. Statute of Limitations. In determining whether the Plaintiff's claims are time-barred, we must first determine when the Plaintiff's Action commenced for statute of limitations purposes." McKenzie v. Lunds, Inc., 63 F. Supp.2d 986, 1001-02 (D. Minn. 1999). We apply Minnesota law on statute of limitations questions because, as a substantive matter, the statute of limitations is controlled by State law. See Larson v. Mayo Foundation, 21 Fed.Appx. 516, 517 (8th Cir. 2001), citing Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir.1997); Larsen v. Mayo Medical Center, 218 F.3d 863, 866 (8th Cir. 2000), citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945); MW AG, Inc. v. New Hampshire Ins. Co., 107 F.3d 644, 646 (8th Cir. 1997)(stating, "Federal courts follow state

substantive law to determine when an action is commenced for statute of limitations purposes"), citing Walker v. Armco Steel Corp., 446 U.S. 740, 752-753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980).

Under Minnesota law, an action is commenced upon the service of process, irrespective of when the Complaint was filed. See Mc-Kenzie v. Lunds, Inc., supra at 1001-02, citing Rule 3.01, Minnesota Rules of Civil Procedure; see also, Metropolitan Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1261 (8th Cir. 1993); Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 328-29 (8th Cir. 1993), cert. denied, 510 U.S. 1093 (1994). Moreover, State rules for the service of process apply to pendant State claims. Id., citing Walker v. Armco Steel Corp., 446 U.S. 740 (1980); Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995); Appletree Square I, Ltd Partnership, 29 F.3d 1283, 1286 (8th Cir. 1994). In Minnesota, there are two means by which a plaintiff may effectively serve a Summons and Complaint, either personally, pursuant to Rule 4.03, Minnesota Rules of Civil Procedure, or by acknowledgment of service by mail, pursuant to Rule 4.05, Minnesota Rules of Civil Procedure. Nieszner v. St. Paul School Dist. No. 625, 643 N.W.2d 645, 649 (Minn.App. 2002), citing Minn. R. Civ. P. 4.05; Turek v. A.S.P. of Moorhead, Inc., 618 N.W.2d 609, 611 (Minn. App. 2000)(stating that "[i]n Minnesota, a plaintiff may effec-

tively serve a summons and complaint by two methods: personally under Minn.R.Civ.P. 4.03 or acknowledged by mail under Minn.R.Civ. P. 4.05"). However, "certified mail does not constitute service by mail under rule 4.05." Nieszner v. St. Paul School Dist. No. 625, supra at 649. Rather, if service was attempted by mail, then the commencement of the action does not occur until the date on which the defendant acknowledges service. See Coons v. St. Paul Companies, 486 N.W.2d 771, 775 (Minn.App. 1992).

Here, the Defendants maintain that the Plaintiff attempted to effect service of process upon Canham, and the Sheriff, on December 4, 2001, and that the Plaintiff did so by mail. The Defendants further contend that Canham, and the Sheriff, did not return the acknowledgment of service to the Plaintiff, and that the Plaintiff then attempted to serve Canham, and the Sheriff, by mailing the Summons and Complaint to Counsel for the Defendants. The Defendants assert that it was not until February 15, 2002, that service was accepted on behalf of Canham, and the Sheriff. Although the Defendants do not identify the date on which the Defendant Mahnomen County was served, they allege that service upon the County was also untimely.[3]

---

[3]The Record indicates that the Defendant Mahnomen County was served on December 13, 2001. See Original Summons and Return of Service, Docket No. 12.

On November 19, 2001, we granted the Plaintiff's Application to Proceed in forma pauperis, and we directed the United States Marshals Service to serve a copy of the Summons and Complaint upon the Defendants. Thus, in truth, it was the Marshals Service who attempted to effect service of process upon the Defendants, by mail, on December 4, 2001. See Original Summons and Return of Service, Docket No. 12.

Pursuant to Rule 4(c)(2), Federal Rules of Civil Procedure, a pro se litigant is entitled to rely on service by the United States Marshals Service and, under Rule 4, good cause exists to excuse untimely service when the failure of a pro se litigant to effect service of process was the fault of the United States Marshals Service. See Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2nd Cir. 1986); see also, McCalmann v. Partners in Care, 2002 WL 856465 at *1 (S.D.N.Y., April 25, 2002); Hamilton v. Clerk, Appellate Div., Second Dep't, 1999 WL 408716 at *3 (E.D.N.Y., June 14, 1999); Sanders v. Workman, 2001 WL 656072 at *4 (D. Del., March 26, 2001); Crowder v. True, 1993 WL 226296, *2 (N.D. Ill., June 24, 1993). In addition, when considering a pro se litigant's violation of Rule 4, we exercise leniency, in order that "'justice is done on the merits rather than on the basis of procedural technicalities.'" Calderon v. True, 1993 WL 413970 at *1 (N.D. Ill., October 15, 1993), quoting Patterson v. Brady, 131 F.R.D. 679, 683 (S.D.

Ind. 1990); see also, Roberts v. Orleans Parish Medical Staff, 2002 WL 1022488 at *5 (E.D. La., May 20, 2002)("[P]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."). Further, Rule 4 is to be construed liberally in cases where the party has received actual notice, and improper service would not lead to dismissal if proper service could still be obtained. See Romandette v. Weetabix Co., Inc., supra at 311.

Although, here, service of process is governed by State law, and not by Rule 4, Federal Rules of Criminal Procedure, given our Order which directed the Marshals Service to effect service of process upon the Defendants, we find that the claimed deficiency in service -- namely, that service was not timely effected -- should be treated the same as if this case were governed by Rule 4, since the equities are identical. Accordingly, in order to allow that justice to be effected on the merits, and not on an opportunistic procedural technicality, we conclude that service was effected upon the Defendants on December 4, 2001, when the Defendants received actual notice of the pendency of this Action. We proceed, therefore, to determine whether any of the Plaintiff's State law claims are time-barred, based upon service being effected on December 4, 2001.

i. The MHRA Claim. In order to pursue a claim under the MHRA, a plaintiff, at his option, must either file an Administrative Charge, or bring a civil action, within one year after the occurrence of the alleged discriminatory act. See, Minnesota Statutes Section 363.06, Subdivision 1 and 3; Minnesota Statutes Section 363.14, Subdivision 1; Beaulieu v. RSJ, Inc., 552 N.W.2d 695 (Minn. 1996); Schiele v. Charles Vogel Mfg. Co., Inc., 787 F. Supp. 1541 (D. Minn. 1992). Here, the Plaintiff filed his a Charge of discrimination, with the Minnesota Department of Human Rights Department ("MHRD"), on August 7, 2000. The date of the alleged discrimination -- the traffic stop by Canham -- occurred on January 1, 2000. Therefore, the Plaintiff plainly filed a Charge of discrimination within the one-year statute of limitations specified in the MHRA. However, "[w]here a plaintiff timely files an administrative charge of discrimination, as Plaintiff did here with the Minnesota Department of Human Rights ("MDHR"), a lawsuit alleging violations of the MHRA must be brought within 45 days of the charging party's receipt of a notice dismissing the charge." Kimble-Parham v. Minn. Mining and Manufacturing, 2002 WL 31229572 at *6 (D. Minn., October 2, 2002), citing Minnesota Statutes Section 363.14, Subdivision 1(a)(1). The MHRD issued an Order, which dismissed the Plaintiff's Charge on November 9, 2000. Allowing five days for service by mail, in order to be timely, the

Plaintiff was required to serve his Summons and Complaint upon the Defendants by December 29, 2000. See Klinghagen v. Setterberg, 1998 WL 249028 at *2 (Minn.App., May 19, 1998).[4] Since the Plaintiff had not effected service upon the Defendants until December 4, 2001 -- nearly one year after the expiration of the applicable limitations period -- his MHRA claim is time-barred, and we recommend that Summary Judgment be granted to the Defendants on that cause of action.

ii. False Imprisonment, Assault, and Abuse of Process.

The applicable statute of limitations for false imprisonment, abuse of process, and assault, is two years. See Mellett v. Fairview Health Services, 634 N.W.2d 421, 423 (Minn. 2001)(false imprisonment); D.M.S. v. Barber, 645 N.W.2d 383, 391 n. 6 (Minn. 2002)(assault); Carroll v. Kestell, 1997 WL 785707 at *1 (Minn.App., December 23, 1997)(assault); Minnesota Statutes Section 541.07(1)(providing a two-year statute of limitations for actions alleging false imprisonment, assault, or other torts[5]). As

[4]We wish to make clear that, to the extent we cite unpublished decisions of the Minnesota Courts, we do so not because we regard them as controlling, for they do not have precedential weight, but because they illustrate that, as to the legal precept that the citation supports, Minnesota Courts have consistently applied the precept, over the years.

[5]Abuse of process is an action sounding in tort. See Kellar v. VonHoltum, 568 N.W.2d 186, 188 (Minn.App. 1997).

we have noted, the Plaintiff's claims all arise out of the traffic stop on January 1, 2000, so the Plaintiff was required to serve process upon the Defendants, as to those claims, by no later than January 1, 2002. Since we have found that service of process was effected on the Defendants on December 4, 2001, we further find that these State common law actions were timely commenced. Accordingly, recommend that this aspect of the Defendants' Motion for Summary Judgment be denied, and we turn to the issue of governmental immunity.

b. Immunity. The Defendants maintain that the Plaintiff's State common law claims are barred by both discretionary, and official immunity, and that vicarious official immunity bars the Plaintiff's State law claims against the Defendant County. Our analysis begins with the Defendants' discretionary immunity defense.

i. Discretionary Immunity. "Under the doctrine of statutory immunity, often referred to as discretionary immunity, municipalities are immune from liability for claims 'based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.'" Conlin v. City of Saint Paul, 605 N.W.2d 396, 400 (Minn. 2000), quoting Minnesota Statutes Section 466.03, Subdivision 6. "This is an exception to the general rule that 'every municipality

is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.'" Id., quoting Minnesota Statutes Section 466.02. "The discretionary function exception is interpreted narrowly." Id., citing Angell v. Hennepin County Regional Rail Auth., 578 N.W.2d 343, 346 (Minn.1998).

"Statutory immunity does not protect all governmental conduct." Conlin v. City of Saint Paul, supra at 400, citing Steinke v. City of Andover, 525 N.W.2d 173, 175 (Minn. 1994). "There are two types of government decisions: planning level, which are protected, and operational level, which are not protected." Id., citing Steinke v. City of Andover, supra at 175. "'Planning level decisions are those involving questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy," while "[o]perational level decisions * * * involve decisions relating to the ordinary day-to-day operations of the government.'" Id., quoting Holmquist v. State, 425 N.W.2d 230, 232 (Minn. 1988); see also Holmes v. Karp, 1996 WL 380662 at *4 (Minn.App., July 9, 1996) (denying the defendant county's claim of discretionary immunity on grounds that the county failed to come forward with any evidence of a planning-level official's decision).

It is not clear which of the Defendants are claimed to be the focus of their attribution of discretionary immunity. However, to the extent that the Defendants assert the defense on behalf of Canham, we fail to find any evidence to support the notion that Canham was involved in any planning-level decisions. Rather, the Record reveals that Canham's involvement in the challenged traffic stop, and in the subsequent submission of an incident report to the Tribal police, while discretionary acts, were more appropriately characterized as decisions at the operational level. Similarly, to the extent that the Defendants invoke the defense of discretionary immunity on behalf of the Defendant Sheriff, the Record is also devoid of a showing that he was involved in any planning level decisions. In contrast, we find that the Defendants have proffered a competent showing that the Defendant County was involved in planning-level decisions, in which the County negotiated, with the White Earth Band, so as to permit its Deputy Sheriffs to assist the Tribal police in enforcing, among other things, traffic laws within the White Earth Indian Reservation, and to allow reciprocal assistance by Tribal police officers. As a result, to the extent that the Defendants seek to immunize the Defendant County's decision, to enter the Cooperative Agreement with the White Earth Band, we find their reliance on discretionary immunity appropriate, and effective in insulating the County from liability on that basis.

Accordingly, we recommend the grant of Summary Judgment to the Defendant County, on the Plaintiff's State common law torts, on the basis of discretionary immunity.

ii. Official Immunity. "In Minnesota, governmental employees are entitled to immunity when they are performing discretionary functions." Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 990, citing Kuha v. City of Minnetonka, 176 F. Supp.2d 926, 934 (D. Minn. 2001)(applying Minnesota law); Janklow v. Minnesota Bd. of Examiners, 552 N.W.2d 711, 715-16 (Minn. 1996); Miskovich v. Independent School Dist. No. 318, 2226 F. Supp.2d 990, 1020 (D. Minn. 2002). As government employees, they are "accorded near complete immunity for their actions in the course of their official duties, so long as they do not exceed the discretion granted them by law." Janklow v. Minnesota Bd. of Examiners, supra at 716. Such official immunity is "intended 'to protect public officials from the fear of personal liability that might deter independent action.'" Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001), rev. denied (Minn., February 28, 2002).

"As a result, the heart of our analysis, under a claim of official immunity, is the nature of the governmental action; that is, was the act discretionary or ministerial." Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 990. "[I]n analyzing any immunity question it is essential to identify the precise govern-

mental conduct at issue." Watson v. Metropolitan Transit Comm'n, 553 N.W.2d 406, 415 (Minn. 1996). "Discretionary decisions are those which involve the exercise of judgment or discretion." Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 990, citing Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); Mowatt v. Hennepin County, 2002 WL 857733 at *4 (Minn.App., May 7, 2002) (stating that discretionary acts are those that involve "the exercise of individual judgment in carrying out official duties"). "In contrast, ministerial decisions, which are the types of decisions that are absolute, certain, and imperative, and involve merely the execution of a specific duty which arises from fixed and designated facts, see, Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991), are not immune to suit." Id. "Some degree of judgment and discretion will not necessarily confer discretionary immunity on an official; the crucial focus is upon the nature of the act." Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988).

The categorization of an act as discretionary or ministerial is a legal question, which the Court determines. See, Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999). "In making this determination the Court [should] keep[] in mind that official immunity, 'protects public officials from the fear of personal liability that might deter independent action and impair the effective performance of their duties.'" Kuha v. City of Minnetonka, supra

at 934, quoting Elwood v. County of Rice, supra at 677. Generally, "[a] police officer who performs his or her duty to prevent crime and enforce the law is not * * * acting in a ministerial capacity, but is usually exercising discretion." Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 990, citing Kuha v. City of Minnetonka, supra at 934; see also, Watson v. Metropolitan Transit Comm'n, supra at 415; Johnson v. Morris, supra at 41.

Rather, "[o]nly when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence." Watson v. Metropolitan Transit Comm'n, supra at 415. The Court, in Kuha, explained the reasoning for such a rule, as follows:

> Official immunity is provided because the community cannot expect police officers to do their duty and then to second-guess them when they attempt to conscientiously do it. To expose police officers to civil liability whenever a third person might be injured would * * * tend to exchange prudent caution for timidity in the already difficult job.

Kuha v. City of Minnetonka, supra at 934-35.

There can be no question, here, that Canham's actions were discretionary exercises of judgment. See Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 991. He was required to make a determination, from the circumstances then facing him, whether to stop the Plaintiff's vehicle for speeding, to detain the Plaintiff briefly while he checked the Plaintiff's driver's license, and to

submit an incident report to the Tribal police. These are the sort of quintessential, discretionary decisions, that police officers must routinely make.

The only remaining question, then, is whether Canham acted with malice. "In addition to the fact that ministerial decisions are not protected by official immunity, the immunity can also be eviscerated when the plaintiff alleges, and proves, that the official acted willfully and maliciously." Id., citing Kuha v. City of Minnetonka, supra at 934, Kelly v. City of Minneapolis, supra at 663. The Minnesota Supreme Court has stated that willful, or malicious conduct, is the "intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Kelly v. City of Minneapolis, supra at 663, quoting Rico v. State, supra at 107. Stated otherwise, "[m]alice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." Id. at 664. The question of malice is an "objective inquiry into the legal reasonableness of an official's actions." Dokman v. County of Hennepin, supra at 298, quoting State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn. 1998).

Here, the Plaintiff has failed to produce any competent evidence, in opposition to the Defendants' Motion, which so much as

suggests that Canham's actions, in effecting a traffic stop of his vehicle, and in later forwarding an incident report to the Tribal police, were motivated by a subjective intent to violate his rights. In addition, as we previously noted, we are unable to glean from the Record the slightest suggestion that the Defendant Sheriff acted in any way to violate the Plaintiff's rights.

The Record is uncontroverted that Canham stopped the Plaintiff's vehicle after Canham had clocked the vehicle as traveling well in excess of the posted speed limit. Canham forwarded an incident report, with respect to the Plaintiff's traffic violation, to the Tribal police, and that transmittal conformed to the provisions in the Cooperative Agreement that was in effect at the time of the stop. The Plaintiff's bald assertion, that Canham's actions were racially motivated, are unsupported by any evidence in the Record, as the Plaintiff does not proffer any evidence to rebut the Defendants' evidentiary showings to the contrary. Applying, as we must, an objective standard of reasonableness to Canham's actions, we find his conduct was appropriate, and nondiscriminatory, as he merely applied the law consistent with the Cooperative Agreement. Therefore, the Defendants' Motion for Summary Judgment, as to the State common law claims asserted against Canham, and the Defendant Sheriff, in their individual capacities, should be granted.

iii. Vicarious Official Immunity. "If a public official is entitled to immunity for a discretionary act, the employing entity is generally entitled to vicarious official immunity as well." Fear v. Independent School Dist. No. 911, 634 N.W.2d 204, 216 (Minn.App. 2001). As the Minnesota Supreme Court has explained:

> When applicable, vicarious official immunity protects the government entity from suit based on the official immunity of its employee. In prior cases, "[g]enerally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without explanation." Pletan [v. Gaines], 494 N.W.2d [38,] 42 [(Minn. 1992)]. We apply vicarious official immunity when failure to grant it would focus "stifling attention" on the official's performance "to the serious detriment of that performance." Olson v. Ramsey County, 509 N.W.2d 368, 372 (Minn. 1993). In such circumstances, we have concluded that "[i]t would be anomalous * * * to impose liability on the [government employer] for the very same acts for which [the employee] receives immunity." Watson [v. Metropolitan Transit Comm'n], 553 N.W.2d at 415. We also suggested in dicta, however, that we might under some circumstances find an exception to vicarious official immunity and hold a governmental entity liable even though the official is not personally liable. Pletan v. Gaines, 494 N.W.2d 38, 42 (Minn. 1992). * * * [W]e clarify that a grant of vicarious official immunity to a public employer would be based on the nature of an employee's immune conduct, whether or not the employee was actually named as a defendant in a lawsuit.

Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998).

"Whether to apply vicarious official immunity is a policy question" and, in considering police officer decisions, "[t]he need to protect the public must be weighed against the concern that the public not be put at risk." Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 992, citing Kuha v. City of Minnetonka, supra at 935; see also, Sletten v. Ramsey County, 2002 WL 109272 at *1 (Minn.App., January 29, 2002)(stating that the decision to apply vicarious immunity to a governmental entity is a policy question).

The Minnesota Supreme Court has applied vicarious official immunity to avoid "the focus of a stifling attention on the [employee's] performance, to the serious detriment of that performance," Olson v. Ramsey County, 509 N.W.2d 368, 372 (Minn. 1993), and the Minnesota Court of Appeals has applied the immunity when it "serves to avoid chilling the [employee's] exercise of his independent judgment by allowing him to act without fearing that his conduct may eventually be subject to review by the judiciary and may expose his employer to civil liability," Ireland v. Crow's Nest Yachts, Inc., 552 N.W.2d 269, 274 (Minn.App. 1996). As such, we believe that public policy dictates that the immunity should be applied here.

If we were to hold the Defendant County, or the Defendant Sheriff, in his capacity as Sheriff of Mahnomen County, liable for Canham's decisions, if those decisions had been unlawful, then the

actions of Canham, which we found insulated from liability, could, nonetheless, be the focus of second-guessing by officers of the County -- a result adverse to the immunity extended to Canham. See Armstrong v. Mille Lacs County Sheriff's Dep't, supra at 992. Such a situation could be exceedingly dangerous to law enforcement, in their work in enforcing the law. Id. Accordingly, we find that, under the facts presented here, cogent policy considerations support a recommendation that official immunity be extended to the County of Mahnomen, and the Defendant Sheriff, in his official capacity, for the actions of Canham, and that the Defendants' Motion for Summary Judgment be granted, on that basis to the Defendants County, and Sheriff, in his individual capacity, as to the Plaintiff's State common law claims.

Lastly, in the interests of completeness, we consider the factual sufficiency of the Plaintiff's State law claims, even though we have found immunity from those claims to be appropriate.

c. Factual Sufficiency of the State Law Claims. The Defendants contend that the Plaintiff's false imprisonment, assault, and abuse of process claims, are not supported by evidence in the Record, and we turn our analysis to those claims.

i. False Imprisonment. Under Minnesota law, there are three elements to the intentional tort of false imprisonment; namely, "(1) words or acts intended to confine, (2) actual

confinement, and (3) awareness by the plaintiff that he is confined." Blaz v. Molin Concrete Products Co., 244 N.W.2d 277, 279 (Minn. 1976), citing Restatement, Torts 2d, §35; Prosser, Torts (4 ed.) §11; 8A Dunnell, Digest (3 ed.) §3728.1; see also Warner v. Jordan, 1998 WL 157363 at *5 (Minn.App., April 7, 1998); Edquist v. Insurance Co. of North America, 1995 WL 635179 at *3 (Minn.App., October 31, 1995); Eilers v. Coy, 582 F. Supp. 1093, 1095 (D. Minn. 1984). A law enforcement officer, however, "can confine or restrain someone suspected of criminal wrongdoing." In Matter of Welfare of R.W.C., 1997 WL 3366 at *1 (Minn. App. January 7, 1997), citing Johnson v. Morris, 453 N.W.2d 31, 36 (Minn. 1990)(holding that a driver had no claim for false imprisonment against a police officer where the officer had probable cause to arrest driver, and granting the defendant's Motion for Summary Judgment on the plaintiff's false imprisonment claim); but see, Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974)(stating that an arrest made without proper legal authority is false imprisonment); Anderson v. Averbeck, 248 N.W. 719, 719 (Minn. 1933)(holding that detaining a lawfully arrested person for an unreasonable amount of time constitutes false imprisonment).

Here, we agree that the plaintiff was detained. However, in the context of an arrest by legal authorities, the essential elements of a claim for false imprisonment are the arrest and the

unlawfulness of the arrest. See, Lundeen v. Renteria, supra at 135. The simple fact is that the Plaintiff was never arrested and, therefore, he has no claim for an unlawful arrest. To the extent that the Plaintiff challenges the lawfulness of Canham's stop of his vehicle, we have already detailed why that stop was lawful.

Moreover, we have also determined, on the Record presented, that the Plaintiff was not detained for an unreasonable amount of time. In Warner v. Jordan, supra at *5, the plaintiff was confined for about one-half of an hour, from the time the officers stopped her vehicle, until they agreed to drive her home. There, the Court held that, "[i]n light of the time spent searching for VIN numbers in an effort to determine whether all or part of appellant's vehicle had been stolen, this amount of time was not unreasonable." Id. The Plaintiff, here, asserts that he was detained "approximately twenty minutes to one-half hour." See Complaint, ¶6. In contrast, the Defendants maintain that the stop was, at most, nine minutes in duration, and they offer the County's radio logs which corroborate their assertion. Indeed, at his deposition, the Plaintiff admitted that he was not wearing a watch at the time of the traffic stop, and that he had only guessed at the length of the stop. See Parker Depo., at p. 33. Nonetheless, even if we assume that the traffic stop was thirty minutes in duration, we conclude that the Plaintiff was not detained for an unreasonable length of

time, since the Plaintiff has admitted to being uncooperative, and argumentative, during the course of the stop, and Canham was properly attempting to ascertain whether the Plaintiff should be cited, under the auspices of the County of Mahnomen, or if an incident report should be transmitted to tribal officers as contemplated by the Cooperative Agreement. Id. at pp. 23-26. Given the overlapping governmental jurisdictions, this was a proper course of police action, and does not, as a matter of law, support a claim for false imprisonment.

ii. Assault. "An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." Dahlin v. Fraser, 288 N.W. 851, 852 (Minn. 1939). "Mere words or threats alone do not constitute assault." Id. "When the words or threats are accompanied by a threat of physical violence under conditions indicating present ability to carry out the threat, they cease to be mere words or threats." Id., citing Johnson v. Sampson, 208 N.W. 814 (Minn. 1926). "The display of force must be such as to cause plaintiff reasonable apprehension of immediate bodily harm." Id. "Evidence that the party charged exhibited anger, used violent language and threatened to strike another while in his presence under circumstances indicating a present ability to carry out the threats is sufficient to show an assault." Id., citing Plonty v. Murphy, 84

N.W. 1005 (Minn. 1901); Mitchell v. Mitchell, 47 N.W. 308 (Minn. 1890).

The Plaintiff alleges that Canham "raised either a flashlight or baton in the air over the deputy's shoulder and Plaintiff felt physically threatened as if Plaintiff were going to be hit." Complaint, ¶7. According to Canham's sworn attestation, however, he did not more than position a flashlight near his shoulder so as to illuminate the interior of the Plaintiff's vehicle. Given the lateness of the hour, at which the traffic stop occurred, and the proximity of the traffic stop to a traveled roadway, officer safety would require no less than the procedure Canham employed. Importantly, Canham's attestation has not been rebutted, and the Plaintiff's mere complaint that he felt threatened, without more, is insufficient to support an assault claim.

Assault requires specific intent and, as a result, to be liable for the intentional tort of assault, the Record must substantiate that Canham intended to strike fear into the Plaintiff and, in fact, did so. The Plaintiff asserts that Canham raised a baton or flashlight, but the Plaintiff does not allege, let alone present evidence, that Canham intended to threaten the Plaintiff. Moreover, the Plaintiff does not so much as assert that Canham exhibited anger, used violent language, or uttered threatening words. Rather, the Record reveals that the Plaintiff exhibited a

sufficient showing of hostility, as to prompt Canham into requesting back-up assistance. On the Record presented, we find that the evidence insufficient to support a viable claim for assault against Canham, and derivatively, against any of the Defendants.

iii. Abuse of Process. "The essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." Kellar v. VonHoltum, 568 N.W.2d 186, 192 (Minn. App. 1997), citing Hoppe v. Klapperich, 28 N.W.2d 780, 786 (Minn. 1947); see also, Bigelow v. Galway, 281 N.W.2d 835, 837 (Minn. 1978); Pow-Bel Construction Corp. v. Gondek, 192 N.W.2d 812, 814 (Minn. 1971); City of Minnetonka v. Delmore, 1990 WL 119342 at *2 (Minn.App., August 21, 1990) ("The two central elements for an action for abuse of process are (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not."), citing Duerscherl v. Foley, 681 F. Supp. 1364, 1369 (D. Minn. 1987)); Anderson v. City of Hopkins, 1988 WL 8301 at *1 (Minn.App., February 9, 1988). "The gist of the action is the misuse or misapplication of the process, after it has once been

issued, for an end other than that which it was designed to accomplish." New Creative Enterprises, Inc. v. Dick Hume & Associates, Inc., 1993 WL 4127 at *2 (Minn.App., January 12, 1993), citing Kittler & Hedelson v. Sheehan Properties, Inc., 203 N.W.2d 835, 840 (Minn. 1973); see also, City of Minnetonka v. Delmore, supra at *2.

In Anderson v. City of Hopkins, the Court explained that the plaintiffs "themselves point out that the police never obtained 'process' and did not serve 'process.'" Anderson v. City of Hopkins, supra at *1. The Court held that, "[t]herefore, there can be no abuse of process" and, "[a]dditionally, the trial court's characterization of the police action as reasonable precludes the element of ulterior motive," noting that "[t]he police had no hidden motive." Id.

Similarly, the Plaintiff makes no showing, here, that Canham, the Defendant Sheriff, or the Defendant County ever served "process" upon the Plaintiff. The Plaintiff alleges that the citation, which he received, had been transmitted to him, by mail, from Officer Goss of the Tribal police, and that he was never prosecuted for his alleged speeding violation, or for driving without a seatbelt. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at para. 4. Moreover, as we have previously determined, Canham's stop of the Plaintiff's

vehicle for speeding was reasonable, as was his transmission of an incident report to the Tribal police. To the extent that such actions constitute "process" -- a very dubious proposition -- the actions of Canham were both reasonable, and lawful. There is no basis to controvert the legitimacy of Canham's purpose, in undertaking the acts complained of, as supported by Canham's averments, and therefore, we conclude that the ulterior motive element of the Plaintiff's abuse of process claim is also unsupported by the evidence in the Record.

In sum, we further recommend that, even if the State common law claims against the Defendants were not barred by immunity, the claims are insufficient as a matter of law, warranting the entry of Summary Judgment, in the Defendants' favor, on the alleged torts. In point of fact, the absence of merit to the Plaintiff's claims is strikingly apparent. The Plaintiff does not deny that he was illegally speeding, without the protection of a seatbelt, and that Canham had not prosecuted him for those offenses, but had transmitted his incident report to the appropriate tribal authorities. Indeed, on this Record, the Plaintiff was not prosecuted for any offense. Even if we found some violation of law -- and we do not -- we are hard-pressed to find any damage to the Plaintiff on the undisputed facts.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion for Summary Judgment [Docket No. 18] be granted.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 14, 2003,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 14, 2003,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.